**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MFS & COMPANY, LLC,

                    Plaintiff,                    No. 09-14063
                                                  Hon. Gerald E. Rosen
vs.


CATERPILLAR, INC.,

                    Defendant.
_____/

**OPINION AND ORDER DENYING DEFANDANT'S MOTION FOR**
**RECONSIDERATION**

**I. INTRODUCTION**

Plaintiff MFS & Company, LLC brought this diversity suit on October 14, 2009,

asserting claims for breach of contract and promissory estoppel.  On November 12, 2010,

the parties filed cross-motions for summary judgment.  The Court issued an opinion and

order disposing of the parties' motions on October 6, 2011 and held, *inter alia*, that

Defendant Caterpillar, Inc. ("Caterpillar") entered into a minimum purchase commitment

for certain engine components.  Caterpillar filed the instant motion to reconsider the

Court's holding that a minimum purchase contract existed.  Having reviewed

Caterpillar's brief and supporting exhibits, as well as the record as a whole, the Court

finds that the pertinent allegations and legal arguments are sufficiently addressed in these

materials and that oral argument would not assist in the resolution of this motion.

Accordingly, the Court will decide Caterpillar's motion "on the briefs." *See* L.R.

7.1(f)(2). The Court's opinion and order is set forth below.

## II. FACTUAL BACKGROUND

The extensive background of the parties' dispute is set forth in the Court's earlier

opinion and order. *See MFS & Co., LLC v. Caterpillar, Inc.*, No. 09-14063, 2011 WL

4693897, at *1-*2 (E.D. Mich. Oct. 6, 2011). For purposes of the instant motion, it is

sufficient to summarize the Court's earlier conclusion that a minimum purchase contract

existed between the parties.

In so holding, the Court paid particular attention to a purchase order from

Caterpillar dated March 30, 2007. The purchase order recorded Caterpillar's purchase of

an indefinite quantity of machined cylinder heads. In addition to containing an open-

ended order, however, the purchase order included a section titled "Item Comments."

That section contained the following sentence: "This purchase order is part of an

umbrella agreement wherein Caterpillar agrees to purchase a combined total of 131,000

machined heads within 18 months of PPAP Approval / SOP after which the price will

reduce to $65.68. Reference Cyltec quotation # 060905–3 dated 3/16/07." The Court

found that this text demonstrated the existence of a minimum purchase contract for

131,000 machined heads by virtue of Caterpillar's own language: Caterpillar recites that

it is party to "an umbrella agreement" for the purchase of 131,000 machined heads and

references a specific price quotation from Cyltec containing relevant terms. The Court

held that this text demonstrated the existence of an enforceable contract despite

Caterpillar's various arguments to the contrary.  Through the instant motion, Caterpillar

seeks to revisit the Court's earlier holding.

### III. ANALYSIS

**A.      Motion for Reconsideration**

Under Local Rule 7.1(h)(3), a motion for reconsideration "must not only

demonstrate a palpable defect by which the court and the parties and other persons

entitled to be heard on the motion have been misled but also show that correcting the

defect will result in a different disposition of the case."  L.R. 7.1(h)(3).  A "palpable

defect" is "a defect that is obvious, clear, unmistakable, manifest or plain."  *United States

v. Lockette*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004).  The motion must be denied if it

"merely present[s] the same issues ruled upon by the court, either expressly or by

reasonable implication."  L.R. 7.1(h)(3).  Caterpillar has proffered a number of arguments

for reconsidering the Court's conclusion that a minimum purchase contract existed.  Each

argument is addressed below.

**B.      Caterpillar's Claim that the Contract Lacks Essential Terms**

Caterpillar's first set of arguments allege that the March 30, 2007 Purchase Order

("the purchase order") lacked essential terms such that no contract could have been

formed.  Indiana law states that "[a] contract for sale of goods may be made in any

manner sufficient to show agreement, including conduct by both parties which recognizes

the existence of such a contract."  Ind. Code 26-1-2-204(1).  Further, "[e]ven though one

or more terms are left open a contract for sale does not fail for indefiniteness if the parties

have intended to make a contract and there is a reasonably certain basis for giving an

3

appropriate remedy." Ind. Code 26-1-2-204(3). Further, there is a reasonably certain

basis for giving an appropriate remedy if the contract references a document or extrinsic

facts for determining any missing, essential terms. *Doe v. HCA Health Servs. of Tenn.,*

*Inc.*, 46 S.W.3d 191, 197 (Tenn. 2001). Caterpillar states that the purchase order relied

upon by the Court lacks the following essential terms: price, product description, and

delivery schedule.

Caterpillar argues that the minimum purchase contract fails because it lacks a price

term. In particular, Caterpillar relies on the difference between a price listed in the

purchase order and the prices contained in Cyltec's March 16, 2007 price quote ("the

Cyltec price quote" or "the price quote"). As explained below, this argument is

unavailing. Price is undoubtedly an essential contract term. *Allen v. Clarian Health*

*Partners, Inc.*, 955 N.E.2d 804, 813 (Ind. Ct. App. 2011). However, a contract that lacks

an explicit price term within the four corners of the document will not fail so long as

there is a reference to "a document or extrinsic facts by which the price will be

determined . . . ." *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 197 (Tenn.

2001). Here, the item comment section that was crucial to the Court's earlier ruling

references the Cyltec price quote, which lays out relevant pricing information.

The Cyltec price quote lists in detail what unit prices Caterpillar would pay for

specific items, and the prices are structured around Caterpillar's commitment of 131,000

machined heads. For instance, until Caterpillar had purchased 131,000 machined diesel

heads, each would have a base price $148.84.[1]  Beginning with machined diesel head

number 131,001, Cyltec's price quote shows that the base price falls to $73.58.  As such,

the purchase order clearly references "a document . . . by which the price will be

determined . . . ."  *Doe*, 46 S.W.3d at 197.

Caterpillar seeks to undermine this conclusion by pointing to a price contained

earlier in the purchase order, since that amount -- $295.905 -- does not appear in Cyltec's

price quote.  This argument fails because the $295.905 price relied upon by Caterpillar is

not a part of the minimum purchase contract, as the Court explained in its earlier opinion

and order.  Rather, the Court held that a contract existed by virtue of the item comments

section alone.  While the document as a whole constitutes an order for an indefinite

number of machined cylinder heads at $295.905 per unit, the item comments section is

the only portion relied upon by the Court as evincing a minimum purchase agreement.

As such, the $295.905 price is immaterial.  The parties had a two-tiered relationship,[2] and

the $295.905 price pertains to that particular purchase order rather than the minimum

---

[1] The base prices may vary from final prices because, as the price quote states, "[p]ricing
is value added only and does not include casting and component pricing or freight costs."
(Def.'s Mot. for Recons. Ex. 8 at 1.)
[2] As the Court stated in its previous opinion and order: "The parties had an overarching
agreement whereby Caterpillar committed to purchasing at least 131,000 machined
heads.  The purchase orders issued by Caterpillar for machined heads constituted separate
purchase agreements in pursuit of Caterpillar's overall guaranteed minimum.  The March
30, 2007 Purchase Order does not constitute the umbrella agreement *per se*.  Rather, the
Item Comments section confirms the existence of an umbrella agreement."  *MFS & Co.,
LLC v. Caterpillar, Inc.*, No. 09-14063, 2011 WL 4693897, at *7 (E.D. Mich. Oct. 6,
2011).

purchase contract as a whole.  Therefore, the parties' minimum purchase contract does

not fail for lack of a price term.[3]

Caterpillar next suggests that the minimum purchase contract should fail because

the item comments section relied upon by the Court "states 'machined heads' but does

not reference whether they were intended to be gas or diesel."  (Def.'s Mot. for Recons.

6.)  That is, Caterpillar contends that the parties failed to specify the subject matter of

their agreement and that this vagueness is fatal to the Court's reasoning.  This apparent

ambiguity is hardly problematic, however, since the text itself resolves any confusion.

While the item comments section initially refers to "a combined total of 131,000

machined heads[,]" the text concludes by stating that "the price will reduce to $65.68"

after 131,000 machined heads have been purchased.  In turn, the price quote referenced

therein clearly shows that the unit price of a machined gas head is $65.68 after 131,000

units.  It thus appears that Caterpillar answered its own question: "machined heads"

seems to refer to machined gas heads by virtue of Caterpillar's own language.

Finally, and without offering argumentation on point, Caterpillar also claims that

the contract recognized by the Court lacks delivery terms.  However, this argument

likewise fails.  On the price quote, below the section describing component prices, Cyltec

included a section titled "Availability of Goods."  This section provides delivery terms as

follows: "Finished goods will be made available to [Caterpillar] within 6 hours dock-to-

---

[3] Caterpillar also refers to a February 2007 letter from Caterpillar stating that prices remained under negotiation.  However, both the price quote and the purchase order post-date the letter, which undermines Caterpillar's reliance on it.  The letter's language does not present a palpable defect in the Court's earlier opinion and order.  *See United States v. Lockette*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004)

dock for a standard freight order." (Def.'s Mot. for Recons. Ex. 8, at 2, 3.)  Furthermore,

the first item in the price quote's list of terms and conditions states that "Freight is FOB

Cyltec for inbound casting and forgings.  CAT to manage transportation commercial

arrangements."  (Def.'s Mot. for Recons. Ex. 8 at 5.)  Clearly, the contract does not lack

language specifying the parties' delivery obligations.

## C.      Caterpillar's Claim that Testimony Contradicts the Court's Holding

Caterpillar also seeks to establish a palpable defect in the Court's earlier opinion

and order by relying on the testimony of individuals affiliated with each party.

Specifically, Caterpillar claims that three pieces of testimony directly contradict the

Court's earlier reasoning.  As explained below, however, two of the depositions cited by

Caterpillar do not support the meaning attributed by Caterpillar; the third deposition

supports Caterpillar's position, but does not evince a palpable defect.

First, Caterpillar claims that Bernie Hogue, the operations manager for Cyltec,

"testified that the terms of a contract were still being negotiated in March, 2007."  (Def.'s

Mot. for Recons. 7.)  Mr. Hogue's testimony does not go as far as Caterpillar would like,

however.  Most importantly, Mr. Hogue's testimony is hearsay.[4]  That is, Mr. Hogue

clearly stated that he played no role in any of the negotiations referred to; indeed, Mr.

---

[4] Mr. Hogue's deposition testimony does not fall within Rule 801(d)(2)(A) or Rule
801(d)(2)(D).  *See* Fed. R. Evid. 801(d)(2)(A) (classifying a party's own statement, even
if made by a representative of the party, as not hearsay); Fed. R. Evid. 801(d)(2)(D)
(classifying "a statement by a person authorized by the party to make a statement
concerning the subject" as not hearsay).  Mr. Hogue did not testify as a representative of
his employer.  Therefore, Rule 801(d)(2)(A) does not apply.  Further, contract
negotiations were not within the scope of Mr. Hogue's employment.  (*See* Hogue Dep.
168:6-7.)  As such, Rule 801(d)(2)(D) does not apply either.

Hogue was not present for negotiations, either.  In response to questions about the

parties' contractual relationship, Mr. Hogue said, "I'm not part of those discussions."

(Hogue Dep. 168:6-7.)  Rather, Caterpillar probed Mr. Hogue for information relayed by

others.  As such, Caterpillar's reliance on Mr. Hogue's testimony fits the textbook

definition of hearsay: "a statement, other than one made by the declarant while testifying

at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed.

R. Evid. 801(c).  This defect aside, Mr. Hogue did not state that a minimum purchase

contract was still under negotiation in March 2007.  Rather, Mr. Hogue merely stated that

Cyltec and Caterpillar were still engaged in negotiations more generally.  Specifically,

Mr. Hogue stated that a co-worker involved in negotiations "didn't get into a lot of

specifics other than they were still, you know, negotiating terms with Caterpillar."

(Hogue Dep. 169:3-5.)  Caterpillar has not identified any direct text that suggests

otherwise.[5]

Second, Caterpillar alleges that David Lindlbaur, the Chief Financial Officer of

Cyltec, testified that a minimum purchase contract was not reached until July 2007.

(Def.'s Mot. for Recons. 7.)  Reliance is misplaced here as well, since Mr. Lindlbaur's

testimony only establishes that a contract was in existence by July 2007, not that a

contract was entered into in July 2007.  In response to questions about the relationship

between the parties in July 2007, Mr. Lindlbaur stated only that "I believe that we had a

contract by [that] point[.]"  (Lindlbaur Dep. 110:19.)

---

[5] Additionally, statements made regarding the status of contract formation are more
appropriately viewed as questions of law for the Court to determine.  Lay witness
testimony on questions of law do not bind the Court.

Finally, Caterpillar cites the deposition of Kim Young, Caterpillar's purchasing agent, as evidence that no minimum purchase contract existed. (Def.'s Mot. for Recons. 7-8.) While Ms. Young indeed stated that the parties had yet to agree on certain essential contract terms, her testimony does not present a palpable defect in the Court's prior opinion and order. Ms. Young's testimony is informative on the issue of contract formation, but it is not dispositive. The testimony presented by Caterpillar is contradicted by the language in the item comments section of the purchase order, on which the Court previously relied. Ms. Young's testimony aids Caterpillar's position, but is insufficient to undermine the Court's earlier holding.

**D.   Caterpillar's Claims Regarding Parol Evidence**

Caterpillar vehemently argues that the language "Eliminate CAT minimum volume commitment" in the price quote cannot bear any meaning other than one that refutes the existence of a minimum purchase agreement. (Def.'s Mot. for Recons. 9-10.) This line of reasoning must clearly be denied because it "merely present[s] the same issues ruled upon by the court, either expressly or by reasonable implication." L.R. 7.1(h)(3). As the Court clearly explained in its earlier opinion, a brief comparison of the price quote and an earlier version of the same document demonstrates that the language relied upon by Caterpillar referred to the elimination of a separate, additional minimum purchase commitment. *See MFS & Co., LLC v. Caterpillar, Inc.*, No. 09-14063, 2011 WL 4693897, at *6 (E.D. Mich. Oct. 6, 2011) To read this language otherwise defies logic. Caterpillar has interpreted this sentence devoid of context, which is curious considering Caterpillar admonishes the Court for supposedly doing the same. (Def.'s

Mot. for Recons. 9.)  Caterpillar further claims that its purchase order terms and conditions prohibit the existence of a minimum purchase contract.  (Def.'s Mot. for Recons. 10-11.)  Arguments of this sort were addressed in the Court's prior opinion, and must be denied accordingly.[6]  *See* L.R. 7.1(h)(3); *MFS & Co., LLC v. Caterpillar, Inc.*, No. 09-14063, 2011 WL 4693897, at *7 (E.D. Mich. Oct. 6, 2011).

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court concludes that no palpable defect exists in the October 6, 2011 opinion and order holding that Caterpillar entered into a minimum purchase contract.  Therefore,

IT IS HEREBY ORDERED that Caterpillar's motion for reconsideration [Dkt. #118] is DENIED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: December 1, 2011

---

[6] In the same portion of its brief, Caterpillar also argues against a minimum purchase contract based on language in the price quote stating that pricing is subject to change based on total order volume and program duration.  (Def.'s Mot. for Recons. 9-10.)  That is, Caterpillar claims that flexible pricing contradicts the existence of a minimum purchase agreement.  The dependency of price on overall volume and program duration does not undermine the existence of a minimum purchase contract, however, as price flexibility is not incompatible with a minimum volume guarantee.  For instance, after committing to purchase a minimum of 131,000 machined heads, Caterpillar might actually order far more than 131,000.  If that were the case, economies of scale might warrant lower prices.  The price quote merely acknowledges this possibility, thereby incentivizing additional purchases.

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 1, 2011, by electronic and/or ordinary mail.

s/Ruth A.Gunther
Case Manager
(313) 234-5137
