UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MFS & COMPANY, LLC,

                Plaintiff,            No. 09-14063
                                              Hon. Gerald E. Rosen

vs.

CATERPILLAR, INC.,

                Defendant.
_____/

## OPINION AND ORDER DENYING DEFANDANT'S MOTION FOR RECONSIDERATION

### I. INTRODUCTION

    Plaintiff MFS & Company, LLC brought this diversity suit on October 14, 2009, asserting claims for breach of contract and promissory estoppel. On November 12, 2010, the parties filed cross-motions for summary judgment. The Court issued an opinion and order disposing of the parties' motions on October 6, 2011 and held, *inter alia*, that Defendant Caterpillar, Inc. ("Caterpillar") entered into a minimum purchase commitment for certain engine components. Caterpillar filed the instant motion to reconsider the Court's holding that a minimum purchase contract existed. Having reviewed Caterpillar's brief and supporting exhibits, as well as the record as a whole, the Court finds that the pertinent allegations and legal arguments are sufficiently addressed in these materials and that oral argument would not assist in the resolution of this motion.

Accordingly, the Court will decide Caterpillar's motion "on the briefs." *See* L.R. 7.1(f)(2). The Court's opinion and order is set forth below.

## II. FACTUAL BACKGROUND

The extensive background of the parties' dispute is set forth in the Court's earlier opinion and order. *See MFS & Co., LLC v. Caterpillar, Inc.*, No. 09-14063, 2011 WL 4693897, at *1-*2 (E.D. Mich. Oct. 6, 2011). For purposes of the instant motion, it is sufficient to summarize the Court's earlier conclusion that a minimum purchase contract existed between the parties.

In so holding, the Court paid particular attention to a purchase order from Caterpillar dated March 30, 2007. The purchase order recorded Caterpillar's purchase of an indefinite quantity of machined cylinder heads. In addition to containing an open-ended order, however, the purchase order included a section titled "Item Comments." That section contained the following sentence: "This purchase order is part of an umbrella agreement wherein Caterpillar agrees to purchase a combined total of 131,000 machined heads within 18 months of PPAP Approval / SOP after which the price will reduce to $65.68. Reference Cyltec quotation # 060905–3 dated 3/16/07." The Court found that this text demonstrated the existence of a minimum purchase contract for 131,000 machined heads by virtue of Caterpillar's own language: Caterpillar recites that it is party to "an umbrella agreement" for the purchase of 131,000 machined heads and references a specific price quotation from Cyltec containing relevant terms. The Court held that this text demonstrated the existence of an enforceable contract despite

2

Caterpillar's various arguments to the contrary. Through the instant motion, Caterpillar seeks to revisit the Court's earlier holding.

## III. ANALYSIS

### A. Motion for Reconsideration

Under Local Rule 7.1(h)(3), a motion for reconsideration "must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." L.R. 7.1(h)(3). A "palpable defect" is "a defect that is obvious, clear, unmistakable, manifest or plain." *United States v. Lockette*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004). The motion must be denied if it "merely present[s] the same issues ruled upon by the court, either expressly or by reasonable implication." L.R. 7.1(h)(3). Caterpillar has proffered a number of arguments for reconsidering the Court's conclusion that a minimum purchase contract existed. Each argument is addressed below.

### B. Caterpillar's Claim that the Contract Lacks Essential Terms

Caterpillar's first set of arguments allege that the March 30, 2007 Purchase Order ("the purchase order") lacked essential terms such that no contract could have been formed. Indiana law states that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Ind. Code 26-1-2-204(1). Further, "[e]ven though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an

appropriate remedy." Ind. Code 26-1-2-204(3). Further, there is a reasonably certain basis for giving an appropriate remedy if the contract references a document or extrinsic facts for determining any missing, essential terms. *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 197 (Tenn. 2001). Caterpillar states that the purchase order relied upon by the Court lacks the following essential terms: price, product description, and delivery schedule.

Caterpillar argues that the minimum purchase contract fails because it lacks a price term. In particular, Caterpillar relies on the difference between a price listed in the purchase order and the prices contained in Cyltec's March 16, 2007 price quote ("the Cyltec price quote" or "the price quote"). As explained below, this argument is unavailing. Price is undoubtedly an essential contract term. *Allen v. Clarian Health Partners, Inc.*, 955 N.E.2d 804, 813 (Ind. Ct. App. 2011). However, a contract that lacks an explicit price term within the four corners of the document will not fail so long as there is a reference to "a document or extrinsic facts by which the price will be determined . . . ." *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 197 (Tenn. 2001). Here, the item comment section that was crucial to the Court's earlier ruling references the Cyltec price quote, which lays out relevant pricing information.

The Cyltec price quote lists in detail what unit prices Caterpillar would pay for specific items, and the prices are structured around Caterpillar's commitment of 131,000 machined heads. For instance, until Caterpillar had purchased 131,000 machined diesel

4

heads, each would have a base price $148.84.[1] Beginning with machined diesel head number 131,001, Cyltec's price quote shows that the base price falls to $73.58. As such, the purchase order clearly references "a document . . . by which the price will be determined . . . ." *Doe*, 46 S.W.3d at 197.

Caterpillar seeks to undermine this conclusion by pointing to a price contained earlier in the purchase order, since that amount -- $295.905 -- does not appear in Cyltec's price quote. This argument fails because the $295.905 price relied upon by Caterpillar is not a part of the minimum purchase contract, as the Court explained in its earlier opinion and order. Rather, the Court held that a contract existed by virtue of the item comments section alone. While the document as a whole constitutes an order for an indefinite number of machined cylinder heads at $295.905 per unit, the item comments section is the only portion relied upon by the Court as evincing a minimum purchase agreement. As such, the $295.905 price is immaterial. The parties had a two-tiered relationship,[2] and the $295.905 price pertains to that particular purchase order rather than the minimum

---

[1] The base prices may vary from final prices because, as the price quote states, "[p]ricing is value added only and does not include casting and component pricing or freight costs." (Def.'s Mot. for Recons. Ex. 8 at 1.)

[2] As the Court stated in its previous opinion and order: "The parties had an overarching agreement whereby Caterpillar committed to purchasing at least 131,000 machined heads. The purchase orders issued by Caterpillar for machined heads constituted separate purchase agreements in pursuit of Caterpillar's overall guaranteed minimum. The March 30, 2007 Purchase Order does not constitute the umbrella agreement *per se*. Rather, the Item Comments section confirms the existence of an umbrella agreement." *MFS & Co., LLC v. Caterpillar, Inc.*, No. 09-14063, 2011 WL 4693897, at *7 (E.D. Mich. Oct. 6, 2011).

purchase contract as a whole. Therefore, the parties' minimum purchase contract does not fail for lack of a price term.[3]

Caterpillar next suggests that the minimum purchase contract should fail because the item comments section relied upon by the Court "states 'machined heads' but does not reference whether they were intended to be gas or diesel." (Def.'s Mot. for Recons. 6.) That is, Caterpillar contends that the parties failed to specify the subject matter of their agreement and that this vagueness is fatal to the Court's reasoning. This apparent ambiguity is hardly problematic, however, since the text itself resolves any confusion. While the item comments section initially refers to "a combined total of 131,000 machined heads[,]" the text concludes by stating that "the price will reduce to $65.68" after 131,000 machined heads have been purchased. In turn, the price quote referenced therein clearly shows that the unit price of a machined <u>gas</u> head is $65.68 after 131,000 units. It thus appears that Caterpillar answered its own question: "machined heads" seems to refer to machined gas heads by virtue of Caterpillar's own language.

Finally, and without offering argumentation on point, Caterpillar also claims that the contract recognized by the Court lacks delivery terms. However, this argument likewise fails. On the price quote, below the section describing component prices, Cyltec included a section titled "Availability of Goods." This section provides delivery terms as follows: "Finished goods will be made available to [Caterpillar] within 6 hours dock-to-

---

[3] Caterpillar also refers to a February 2007 letter from Caterpillar stating that prices remained under negotiation. However, both the price quote and the purchase order post-date the letter, which undermines Caterpillar's reliance on it. The letter's language does not present a palpable defect in the Court's earlier opinion and order. *See United States v. Lockette*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004)

dock for a standard freight order." (Def.'s Mot. for Recons. Ex. 8, at 2, 3.) Furthermore, the first item in the price quote's list of terms and conditions states that "Freight is FOB Cyltec for inbound casting and forgings. CAT to manage transportation commercial arrangements." (Def.'s Mot. for Recons. Ex. 8 at 5.) Clearly, the contract does not lack language specifying the parties' delivery obligations.

C. **Caterpillar's Claim that Testimony Contradicts the Court's Holding**

Caterpillar also seeks to establish a palpable defect in the Court's earlier opinion and order by relying on the testimony of individuals affiliated with each party. Specifically, Caterpillar claims that three pieces of testimony directly contradict the Court's earlier reasoning. As explained below, however, two of the depositions cited by Caterpillar do not support the meaning attributed by Caterpillar; the third deposition supports Caterpillar's position, but does not evince a palpable defect.

First, Caterpillar claims that Bernie Hogue, the operations manager for Cyltec, "testified that the terms of a contract were still being negotiated in March, 2007." (Def.'s Mot. for Recons. 7.) Mr. Hogue's testimony does not go as far as Caterpillar would like, however. Most importantly, Mr. Hogue's testimony is hearsay.[4] That is, Mr. Hogue clearly stated that he played no role in any of the negotiations referred to; indeed, Mr.

---

[4] Mr. Hogue's deposition testimony does not fall within Rule 801(d)(2)(A) or Rule 801(d)(2)(D). *See* Fed. R. Evid. 801(d)(2)(A) (classifying a party's own statement, even if made by a representative of the party, as not hearsay); Fed. R. Evid. 801(d)(2)(D) (classifying "a statement by a person authorized by the party to make a statement concerning the subject" as not hearsay). Mr. Hogue did not testify as a representative of his employer. Therefore, Rule 801(d)(2)(A) does not apply. Further, contract negotiations were not within the scope of Mr. Hogue's employment. (*See* Hogue Dep. 168:6-7.) As such, Rule 801(d)(2)(D) does not apply either.

Hogue was not present for negotiations, either. In response to questions about the parties' contractual relationship, Mr. Hogue said, "I'm not part of those discussions." (Hogue Dep. 168:6-7.) Rather, Caterpillar probed Mr. Hogue for information relayed by others. As such, Caterpillar's reliance on Mr. Hogue's testimony fits the textbook definition of hearsay: "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). This defect aside, Mr. Hogue did not state that a minimum purchase contract was still under negotiation in March 2007. Rather, Mr. Hogue merely stated that Cyltec and Caterpillar were still engaged in negotiations more generally. Specifically, Mr. Hogue stated that a co-worker involved in negotiations "didn't get into a lot of specifics other than they were still, you know, negotiating terms with Caterpillar." (Hogue Dep. 169:3-5.) Caterpillar has not identified any direct text that suggests otherwise.[5]

    Second, Caterpillar alleges that David Lindlbaur, the Chief Financial Officer of Cyltec, testified that a minimum purchase contract was not reached until July 2007. (Def.'s Mot. for Recons. 7.) Reliance is misplaced here as well, since Mr. Lindlbaur's testimony only establishes that a contract was in existence by July 2007, not that a contract was entered into in July 2007. In response to questions about the relationship between the parties in July 2007, Mr. Lindlbaur stated only that "I believe that we had a contract by [that] point[.]" (Lindlbaur Dep. 110:19.)

---

[5] Additionally, statements made regarding the status of contract formation are more appropriately viewed as questions of law for the Court to determine. Lay witness testimony on questions of law do not bind the Court.

Finally, Caterpillar cites the deposition of Kim Young, Caterpillar's purchasing agent, as evidence that no minimum purchase contract existed. (Def.'s Mot. for Recons. 7-8.) While Ms. Young indeed stated that the parties had yet to agree on certain essential contract terms, her testimony does not present a palpable defect in the Court's prior opinion and order. Ms. Young's testimony is informative on the issue of contract formation, but it is not dispositive. The testimony presented by Caterpillar is contradicted by the language in the item comments section of the purchase order, on which the Court previously relied. Ms. Young's testimony aids Caterpillar's position, but is insufficient to undermine the Court's earlier holding.

**D.    Caterpillar's Claims Regarding Parol Evidence**

Caterpillar vehemently argues that the language "Eliminate CAT minimum volume commitment" in the price quote cannot bear any meaning other than one that refutes the existence of a minimum purchase agreement. (Def.'s Mot. for Recons. 9-10.) This line of reasoning must clearly be denied because it "merely present[s] the same issues ruled upon by the court, either expressly or by reasonable implication." L.R. 7.1(h)(3). As the Court clearly explained in its earlier opinion, a brief comparison of the price quote and an earlier version of the same document demonstrates that the language relied upon by Caterpillar referred to the elimination of a separate, additional minimum purchase commitment. *See MFS & Co., LLC v. Caterpillar, Inc.*, No. 09-14063, 2011 WL 4693897, at *6 (E.D. Mich. Oct. 6, 2011) To read this language otherwise defies logic. Caterpillar has interpreted this sentence devoid of context, which is curious considering Caterpillar admonishes the Court for supposedly doing the same. (Def.'s

9

Mot. for Recons. 9.) Caterpillar further claims that its purchase order terms and conditions prohibit the existence of a minimum purchase contract. (Def.'s Mot. for Recons. 10-11.) Arguments of this sort were addressed in the Court's prior opinion, and must be denied accordingly.[6] *See* L.R. 7.1(h)(3); *MFS & Co., LLC v. Caterpillar, Inc.*, No. 09-14063, 2011 WL 4693897, at *7 (E.D. Mich. Oct. 6, 2011).

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court concludes that no palpable defect exists in the October 6, 2011 opinion and order holding that Caterpillar entered into a minimum purchase contract. Therefore,

IT IS HEREBY ORDERED that Caterpillar's motion for reconsideration [Dkt. #118] is DENIED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: December 1, 2011

---

[6] In the same portion of its brief, Caterpillar also argues against a minimum purchase contract based on language in the price quote stating that pricing is subject to change based on total order volume and program duration. (Def.'s Mot. for Recons. 9-10.) That is, Caterpillar claims that flexible pricing contradicts the existence of a minimum purchase agreement. The dependency of price on overall volume and program duration does not undermine the existence of a minimum purchase contract, however, as price flexibility is not incompatible with a minimum volume guarantee. For instance, after committing to purchase a minimum of 131,000 machined heads, Caterpillar might actually order far more than 131,000. If that were the case, economies of scale might warrant lower prices. The price quote merely acknowledges this possibility, thereby incentivizing additional purchases.

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 1, 2011, by electronic and/or ordinary mail.

       s/Ruth A.Gunther
       Case Manager
        (313) 234-5137